IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GODDESS AND BAKER WACKER L.L.C., individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> STERLING BAY COMPANIES, L.L.C., <br><br> Defendant | Case No. 21-cv-1597 <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Goddess and Baker Wacker, L.L.C. (hereafter "Goddess" or "Plaintiff"), a tenant in a building which was managed by Defendant Sterling Bay Companies, L.L.C. (hereafter "Sterling Bay" or defendant), brings this class action against Sterling Bay for damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO") on behalf of a class of all tenants of Sterling Bay's office buildings in Chicago's Loop and West Loop.

**SUMMARY OF THE CASE**

1. This is a RICO class action brought by the tenants in certain Chicago office buildings managed by Sterling Bay for conspiring with the labor unions representing its employees and local moving companies to force these tenants to hire union only contractors (particularly movers and the building trades such as electricians, painters and carpet installers).

2. The result is that Sterling Bay's tenants must pay for higher priced unionized labor. These tenants have suffered damages from this ongoing conspiracy.

1

3. The conspiracy is an illegal "hot cargo" agreement carried out by Sterling Bay at the buildings listed below in the Chicago Loop and West Loop. By requiring tenants in these buildings to use unionized labor at the behest of the unions in order to move into and build out their offices – or not be allowed to do business – Sterling Bay is compounding the hot cargo agreement with violations of the Hobbs Act, a type of racketeering activity.

## PARTIES, JURISDICTION, AND VENUE

4. Plaintiff Goddess is an Illinois L.L.C.

5. Defendant Sterling Bay is an Illinois L.L.C.

6. The Court has federal question jurisdiction pursuant to 18 U.S.C. §1964(c), the civil RICO cause of action, and 28 U.S.C. §1332, as a federal question.

7. Venue is proper here as Sterling Bay conducts business in this district, and the relevant events and damages occurred here.

## FACTS

8. Sterling Bay manages or has managed several large commercial office buildings in the Chicago Loop and West Loop. These include: One Prudential Plaza (130 E. Randolph St.), Two Prudential Plaza (180 N. Stetson Av.), 311 W. Monroe St., 121 W. Wacker/221 N. LaSalle St., and 1000 W. Fulton St. Its management responsibility includes, among many others, setting rules for building access by contractors.

9. Since at least 2013, Sterling Bay has allowed three labor unions to restrict access to its buildings by any non-union contractors. The unions are: International Union of Operating Engineers Local 399 ("Local 399"); AFL-CIO, Service Employees International Union, Local 1 ("Local 1"); and Teamsters Local 705 ("Local 705") ("the three unions" collectively).

10. Local 399 and Local 1 have collective bargaining agreements ("CBAs") with Sterling Bay governing the terms of employment of its engineers and janitors. But those CBA's do not, and

2

cannot, legally prohibit Sterling Bay from denying its tenants the right to have non-union laborers access or perform work in their office spaces without committing an unfair labor practice, known as a "hot cargo violation," detailed below.

11. Local 705 represents movers, which every tenant needs to move in and out of their suites, an expensive undertaking. It does not have a CBA with Sterling Bay, but successfully pressures it to forbid non-union movers from accessing its buildings.

12. The conspiracy between the three unions and Sterling Bay is unwritten. It violates the National Labor Relations Act (NLRA), 29 U.S.C. §158(e) as a type of "unfair labor practice" commonly referred to as a "hot cargo agreement," a pact by an employer and a union to "cease handling" or otherwise dealing with an entity because it is not unionized.

13. Sterling Bay has agreed to impose this restriction ("the union-only rule") on its tenants in the buildings listed in Paragraph 8 and possibly more in the Chicago Loop and West Loop, which will be fully determined through discovery. The purpose of the hot cargo agreement is to punish non-union contractors and reward union contractors.

14. These three unions have exerted their power over Sterling Bay for years. This is primarily accomplished by the chief engineers of each building who, as members of Local 399, agree to report non-union contractors, including movers, to their union to initiate the process of ejection. Once notified by the chief engineer, the union's business agents will then contact Sterling Bay's building manager for the building and threaten a picket and placement of the inflatable rat[1] in front of the building if the non-union contractor is not promptly removed. Sterling Bay always acquiesces to these union demands rather than pursue a "hot cargo" unfair labor practice claim

---

[1] "Scabby the Rat" can be up to 25 feet tall and is frequently used in union demonstrations, with noted appearance from at least the late 1980's by the International Union of Operating Engineers in Chicago. https://www.npr.org/2020/12/18/947918263/the-history-of-scabby-the-rat

3

against the unions. The result is an agreement with the three unions which also threaten to join the picketing, not to permit non-union contractors into its buildings and avoid the union pressure even though this agreement is illegal and detrimental to Sterling Bay's tenants.

15. Sterling Bay enforces this union-only policy through its tenant handbook/rules and the directions to its building managers to keep non-union contractors out. Before Sterling Bay permits a tenant to use a contractor in its office space, it requires proof of the contractor's union membership. If the contractor is unable to provide such proof, the contractor is denied entry into the building. And if a non-union contractor does make it in to a building the Sterling Bay chief engineers take action, as detailed above.

### The Higher Cost of Union Labor

16. The difference in cost between union and non-union labor is significant, at least 20% higher for union workers.

17. For example, a comparison of hourly wage rates from the U.S. Department of Labor, Bureau of Labor Statistics ("BLS") for the Chicago metropolitan area (which includes both union and non-union workers) with the Illinois Department of Labor's prevailing wage rate for Cook County, which measures only union wages, indicates sizeable differences. With respect to the three most common categories of labor used in commercial renovation, the differences are as follows: for carpenters, $33.74 (BLS) versus $48.55 (Cook County prevailing union)—a 43.9% difference; for electricians, $39.10 versus $49.35—a 26.2% difference; and, for painters, $25.93 versus $47.30—a 82.4% difference.[2]

---

[2] *See* U.S. Dep't of Labor, Bureau of Labor Statistics, May 2019 Occupational Employment Statistics, Chicago-Naperville-Elgin Metropolitan Div, available at: https://www.bls.gov/oes/current/oes_16980.htm#00-0000. The Illinois Prevailing Wage Act, 820 ILCS 130/3 *et seq.*, requires contractors to pay workers on "public works" projects "the general prevailing rate of hourly wages in the locality." *Id.* at § 9. The Illinois Department of Labor is required to annually ascertain and publish these prevailing rates for each county in the state. *Id.* The 2019 rates for Cook County can be

18. As a result, Goddess and each putative Class member denied the choice to use non-union contract labor have been overcharged by a likely-conservative estimate of at least 20% (and likely more). The actual amount will have to be determined by an economist.

### **Goddess' Experience with Sterling Bay**

19. Goddess is a coffee and confection shop with several retail stores in downtown Chicago. In 2016 it entered into an eleven-year lease for a retail space on the first floor at 121 W. Wacker Dr./221 N. LaSalle St., Chicago. The space needed a considerable amount of work to conform it to Goddess' space plan for operation of its store.

20. In the past four years, Goddess performed work on its storefront to update its store entryway, its doors, and HVAC system, as well as other projects, which improved its customer space. This work included, *inter alia*, electrical installation, carpentry, drywalling, tile installation, plumbing, painting, and ceiling installation.

21. Goddess was forced by Sterling Bay to use union labor for all of this work, for the general contracting and for the subcontractors, even though it wanted to use non-union labor. Sterling Bay would not permit Goddess to begin and carry out this work unless it was using union contractors.

22. To comply with Sterling Bay's rule, Goddess hired a union general contractor, Urban Innovations, Ltd. of Chicago.

23. Goddess paid Urban Innovations at least $81,443 in the last four years for this work as detailed above. Therefore, it has been damaged by being forced to pay for higher priced union labor. This amount represents at least a 20% union overcharge, which is the amount of Goddess's damages.

---

found here: https://www2.illinois.gov/idol/Laws-Rules/CONMED/Documents/2019%20Rates/July%2015/Cook.pdf.

**Sterling Bay's Other Tenants Have Also Been Victims of the Illegal Union-Only Rule**

24. Sterling Bay has imposed the same illegal union-only rule on all of its tenants in the buildings listed herein, at least, including by way of example only, those set forth in the following paragraphs.

Rosebud Restaurants

25. Rosebud Restaurants is a restaurant group based in Chicago with restaurants located throughout the Chicagoland area, including several in the Chicago Loop.

26. From 2019 to the present, Rosebud Restaurants has been in the process of opening a new establishment at the Sterling Bay-managed building located at 130 E. Randolph St. (One Prudential Pl.). This restaurant opening has involved extensive contract labor including electrical, painting, drywall installation, wiring, and the like.

27. In order to build out its space and complete this work, Rosebud Restaurants, per Sterling Bay's mandatory union-only rule, was required to hire union contractors.

28. These union contractors charged more than non-union firms. Thus, Rosebud Restaurants was injured by the same pattern of racketeering as Goddess.

Clark Hill, PLC

29. Clark Hill, PLC ("Clark Hill") is a multidisciplinary, international law firm with offices both inside and outside of the United States, including an office in the Chicago Loop.

30. In September, 2017, Clark Hill signed a lease to move into the Sterling Bay managed building, 130 E. Randolph St (One Prudential Pl.).

31. In order to move into and build out its space, Clark Hill, per Sterling Bay's mandatory union-only rule, was required to hire union contractors.

32. The union contractors charged more than non-union firms. Thus, Clark Hill was damaged by the same pattern of racketeering as Goddess.

Disparti Law Group

33. Disparti Law Group PA ("Disparti Law") is a personal injury and disability law firm based in Chicago, with locations in the Tampa Florida area and the Chicagoland area, including the Chicago Loop

34. In 2019, Disparti Law signed a lease to move into the Sterling Bay managed building, 121 W. Wacker. Sterling Bay required it to use a union mover to move into its office space in 2019. Sterling Bay even provided the law firm with a list of "approved" union contractors with information supplied by the mover's union.

35. In order to move into the space, Disparti Law Group, per Sterling Bay's mandatory union-only rule, was required to hire union contractors, which charged more than non-union firms.

36. Thus, Disparti Law was injured by the same pattern of racketeering as Goddess.

Belmont Bank & Trust

37. Belmont Bank & Trust ("Belmont Bank") is a community bank located based in Chicago and with locations throughout the Chicagoland area, including the Chicago Loop.

38. In 2013, Belmont Bank signed a lease to move into the Sterling Bay managed building, 121 W. Wacker Drive. Sterling Bay required it to use a union mover to move into its office space.

39. In order to move into the space, Belmont Bank & Trust, per Sterling Bay's mandatory union-only rule, was required to hired union contractors, which charged more than non-union firms.

40. Thus, Belmont Bank was injured by the same pattern of racketeering as Goddess.

41. Sterling Bay maintains a strict policy and practice to not allow any contractor to access the building without its approval. It will not approve any non-union firm. This policy/rule is communicated to each and every tenant prior to commencing any move/contractor work.

42. This mandatory union-only rule has been continuously in place at all of the Sterling Bay-managed buildings listed in Paragraph 8 during Sterling Bay's management of each of these buildings. This began at least in 2013 and possibly earlier.

43. Sterling Bay's implementation and enforcement of its mandatory union-only rule is still in existence. New and current tenants are not permitted to use non-union contacting firms to do any work in their spaces. Sterling Bay will not allow any non-union contractors to even enter the building.

44. Thus, Sterling Bay has been engaged in this illegal practice since Goddess' 2016 move into its space and before, and the practice has been continuously in effect ever since, harming other tenants for over four years, if not longer.

45. Moreover, the illegal practice is still in effect today and will continue to harm all current and future tenants into the future until halted by judicial intervention.

46. Sterling Bay's conduct, as described above, is thus a "closed" and an "open" scheme, pattern of racketeering activity.

## The Restriction Violates the Hobbs Act

47. The "Hot Cargo" conspiracy among the unions and Sterling Bay also violates 18 U.S.C. §1951(a), which states, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by…extortion or attempts or conspires so to do … shall be fined under this title or imprisoned not more than twenty years, or both ….

8

48. Pursuant to §1951(b), extortion means: "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

49. The extorted property is the money that Goddess was required to spend on more expensive union services. Sterling Bay's denial of access to non-union movers, tradesman, and contractors preys on the tenants' fear of lost income that will result if they cannot get their offices spaces worked on by tradesmen. In other words, unless Goddess (and the other tenants) accede to Sterling Bay's demands, they will not be able to start or complete their renovations and be open for business.

50. By refusing to allow tenants to conduct business unless they use union labor, Sterling Bay effectively holds hostage the tenants' ability to run their own businesses.

51. The use of economic fear here is wrongful because the agreement between Sterling Bay and the unions to impose union-only terms on the tenants is an illegal "hot cargo" agreement. It violates 29 U.S.C. §158(e), as detailed above.

52. These violations of the Hobbs Act have been occurring continuously at some, if not all, of Sterling Bay's Loop and West Loop buildings since at least 2013. It is Sterling Bay's regular way of managing its buildings and therefore, this practice will continue unabated, victimizing every tenant until halted by judicial intervention.

### Class Allegations

53. The preceding paragraphs are incorporated herein as though fully set forth below.

54. Goddess brings this action both on behalf of itself, and as a class action, pursuant to Federal Rule of Civil Procedure, Rule 23(b)(2) and (b)(3), on behalf of a Class defined as:

> All individuals and entities who were tenants in Sterling Bay's Chicago Loop and West Loop commercial buildings who were subjected to the union-only rule and were required to hire union

9

>contractors/tradesmen for work at/in their properties in the past four years.

55. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, parent corporations and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

56. The Class is so numerous that joinder of all class members is impractical. While the exact number of Class members is unknown to Goddess at this time, it believes that there are, at least, hundreds, and their identities and relevant information can be ascertained from Sterling Bay's records.

57. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

   a) Whether Sterling Bay engaged in a conspiracy with any and/or all of the three unions to require only approved union contractors be permitted in its Loop buildings;
   b) Whether tenants were obliged to use union contractors/tradesmen as a result of the conspiracy;
   c) Whether Sterling Bay committed a pattern of violations of 18 U.S.C. §1951;
   d) Whether Sterling Bay's conduct caused injury to the members of the Class and, if so, the proper amount of damages; and
   e) Whether Goddess and the other members of the Class are entitled to injunctive relief.

58. Goddess' claims are typical of the absent Class members because they were all tenants in buildings managed by Sterling Bay and were subjected to its union only rule during the relevant time period. It seeks no relief that is adverse to the absent Class members.

59. Goddess will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and RICO litigation. Class counsel will fairly and adequately represent the interests of the class.

60. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impractical. The prosecution of separate actions by many individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons or entities similarly situated without sacrificing procedural fairness.

61. Counsel anticipates no difficulty in the management of this case because the evidence proving the conspiracy is obtainable through discovery. Damages can be determined on a Class-wide basis by an economist from publicly available data and records of the class members, contractors and other third parties.

## COUNT I:
## CLAIM AGAINST STERLING BAY FOR VIOLATING 18 U.S.C. §1962(c)

62. The preceding paragraphs are incorporated herein as though fully set forth below.

63. Defendant Sterling Bay is a RICO person pursuant to §1961(3).

64. Sterling Bay has committed a pattern of repeated violations of §§1951 for the past four years (and longer), which are "acts of racketeering" pursuant to 18 U.S.C. §§1961(1)(B). As noted above, its implementation and enforcement of a mandatory union-only rule constitutes both a

11

closed and open-ended pattern of racketeering. It has been ongoing for at least seven years, and likely longer. It is also currently ongoing and will continue into the future without judicial intervention.

65. Each instance in which Sterling Bay forces its tenants to use union contractors through the economic fear described above is a violation of §1951.

66. All Sterling Bay tenants in the buildings have also been victimized in the same manner by the exact same practice. Any tenant, since at least 2017, who was not permitted by Sterling Bay to use non-union contractors/tradesmen/firms would also be a victim of Sterling Bay's same practice.

67. The RICO enterprise is an association-in-fact enterprise, pursuant to 18 U.S.C. §1961(4), consisting of the three unions and Sterling Bay.

68. This enterprise has a common purpose: to force union-only labor on commercial tenants in the buildings managed by Sterling Bay. It has been ongoing for years and depends upon the communications among the members to carry out its illegal purpose.

69. To accomplish this goal, as detailed above, Sterling Bay's chief engineers initiate a process of collaboration with their union, which then expands to involve the other two unions, to expel non-union contractors under the threat of picketing and use of the inflatable rat.

70. This relationship has been ongoing for many years.

71. This enterprise also affects interstate commerce, as required by 18 U.S.C. §§1962(c) and (d). Sterling Bay is an Illinois limited liability company which leases office space to tenants headquartered in other states, like Clark Hill (headquartered in Michigan) and Disparti Law (based in Florida).[3] Sterling Bay also develops and builds property in the Chicagoland area and must

---

[3] https://www.sterlingbay.com/expertise

contract with out-of-state suppliers to buy material for these projects. And Local 399 and Local 1 are huge multi-state "locals" with members residing in other states.

72. Therefore, Sterling Bay has violated 18 U.S.C. §1962(c), which states, in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…

73. As a direct and proximate cause of Sterling Bay's pattern of racketeering, Goddess been injured in its business and property, pursuant to 18 U.S.C. §1964(c), by being forced to use a union general contractor, Urban Innovations, which in turn hired union subcontractors, to perform its build out at higher prices than non-union firms would cost. Goddess overpaid for this work by at least approximately $13,574, which represents a 20% overpayment on $81,443, the amount which Goddess actually paid to Urban Innovations in the last four years.

74. Accordingly, Goddess demands judgment be entered against Sterling Bay, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. Goddess also asks for preliminary and permanent injunctions prohibiting Sterling Bay from continuing to enforce the union-only policy.

75. Goddess requests a jury trial.

76. Goddess requests certification of the case as a class action.

## COUNT II:
## CLAIM AGAINST STERLING BAY FOR VIOLATING 18 U.S.C. §1962(d)

77. The preceding paragraphs are incorporated herein as though fully set forth below.

78. In carrying out the RICO violations, Sterling Bay formed an agreement with the three unions to carry out the objectives described above.

79. This agreement has been ongoing between these entities for at least the last seven years, and likely, longer.

80. 18 U.S.C §1962(d) states, in pertinent part: "It shall be unlawful for any person to conspire to violate subsection (c) of this section."

81. Therefore, this is an agreement to violate §1962(c), which violates 18 U.S.C. §1962(d).

82. As a direct and proximate cause of Sterling Bay's conspiracy to violate §1962(c), Goddess has been injured in its business and property, pursuant to 18 U.S.C. §1964(c), as detailed above.

83. Accordingly, Goddess demands judgment be entered against Sterling Bay, pursuant to 18 U.S.C. §1964(c), for its damages, trebled, plus attorney's fees, costs and pre-judgment interest. Goddess also seeks preliminary and permanent injunctions against Sterling Bay from continuing to enforce the union-only policy.

84. Goddess requests a jury trial.

85. Goddess requests certification of the case as a class action.

## COUNT III
## Declaratory Judgment Act

65. Goddess requests that the Court declare the union-only rule to be illegal and therefore unenforceable, pursuant to 28 U.S.C. §2201, the Declaratory Judgment Act.

Dated: March 23, 2021                  Respectfully submitted,

                                             */s/ James B. Zouras*
                                             James B. Zouras
                                             Ryan F. Stephan
                                             Anna M. Ceragioli
                                             **STEPHAN ZOURAS, LLP**
                                             100 N. Riverside Plaza
                                             Suite 2150

Chicago, Illinois 60606
(312) 233.1550
(312) 233.1560 *fax*
jzouras@stephanzouras.com
rstephan@stephanzouras.com
aceragioli@stephanzouras.com

Howard Foster
Matthew Galin
**FOSTER PC**
10 S. Riverside Plaza, Suite 875
Chicago, IL 60606
(312) 726-1600
hfoster@fosterpc.com
mgalin@fosterpc.com


**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on March 23, 2021, I filed the attached with the Clerk of the Court, using the ECF system, which will send such filing to all attorneys of record.

                                                            */s/ James B. Zouras*