## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **GODDESS AND BAKER** | ) | |
| **WACKER L.L.C., on behalf of** | ) | |
| **itself and all others** | ) | |
| **similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 21 C 1597** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **STERLING BAY COMPANIES,** | ) | |
| **L.L.C.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Goddess and Baker Wacker, L.L.C. ("Goddess") is a tenant in a building in downtown Chicago managed by Defendant Sterling Bay Companies, L.L.C. ("Sterling Bay"). Goddess alleges that Sterling Bay conspired with three unions—International Union of Operating Engineers Local 399 ("Local 399"); AFL-CIO, Service Employees International Union, Local 1 ("Local 1"); and Teamsters Local 705 ("Local 705") (collectively "the Unions")—to force Goddess and other Sterling Bay tenants to use only unionized labor to maintain and make improvements to their properties. And so, Goddess brings this putative class action alleging that Sterling Bay violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*., by colluding with the Unions to extort Goddess in violation of the Hobbs Act, 18 U.S.C. § 1951 *et seq*.

Sterling Bay moves to dismiss Goddess's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and, in the alternative, to refer the case to the National Labor Relations Board ("NLRB"). For the following reasons, Sterling Bay's motion to dismiss is denied, and Sterling Bay's motion to refer this case to the NLRB under the doctrine of primary jurisdiction is granted.

## I.  Background[1]

Goddess is a coffee shop and bakery that has rented commercial space in 121 W. Wacker Drive ("121 Wacker") since 2016. Class Action Compl. ("Compl.") ¶ 19, ECF No. 1. Sterling Bay manages 121 Wacker and is responsible for supervising contractors' access to the building. *Id.* ¶ 8.

Since its lease began, Goddess has made extensive improvements to the premises, including "electrical installation, carpentry, drywalling, tile installation, plumbing, painting, and ceiling installation." *Id.* ¶ 20. According to Goddess, Sterling Bay has forced it to use unionized labor for all of this work. *Id.* ¶ 21. This is in keeping with Sterling Bay's practice of forcing all tenants at several other Sterling Bay-managed properties to do the same. *See id.* ¶ 24.

As Goddess sees it, the management company's union-only policy stems from a conspiratorial agreement between Sterling Bay and the Unions to require tenants to use unionized labor. *Id.* ¶ 12. The arrangement purportedly works as follows. At each Sterling Bay building, the chief engineers, who are members of Local 399, report

---

[1]     The following well-pleaded factual allegations are accepted as true for purposes of the motion to dismiss. *Roberts v. City of Chi.*, 817 F.3d 561, 564 (7th Cir. 2016).

the presence of any nonunionized contractors to their union. *Id.* ¶ 14. Local 399 notifies Sterling Bay of the nonunionized workers and threatens to picket the Sterling Bay building and display the notorious "Scabby the Rat"[2] in front of the building, if Sterling Bay does not remove the nonunionized workers. *Id.* The other two unions, who benefit from the arrangement, agree to join the picket. *See id.*

In an effort to avert picketing in front of its building, Sterling Bay then contacts the tenant that employed the nonunion labor and orders it to stop using nonunion labor. *Id.* Over time, this arrangement hardened into Sterling Bay's policy to require all tenants to submit proof of a contractor's union membership before the contractor is allowed access to the building. *Id.* ¶¶ 15, 41. This policy is enforced through Sterling Bay's tenant handbook and its directions to its building managers to deny contractors access to the building if the contractors cannot prove that they are union members. *Id.* ¶ 15. Sterling Bay communicates this policy to all tenants before they begin a move or contract work. *Id.* ¶ 41.

Because unionized labor is more expensive than nonunionized labor, *id.* ¶¶ 16–18, Goddess has spent at least twenty percent more on improvements than it would have if Sterling Bay had permitted it to use nonunionized labor. *Id.* ¶ 23. Goddess brings this putative class action under RICO §§ 1962(c)–(d) to recover these damages for itself and all other Sterling Bay tenants forced to pay a "premium" for unionized labor. Goddess pleads racketeering activity under § 1962(c) and predicate offenses of

---

[2]     Scabby is the popular name for a giant inflatable rat used by trade unions to draw attention to picketing and strikes. *See Constr. and Gen. Labs.' Union No. 330 v. Town of Grand Chute*, 915 F.3d 1120, 1123 (7th Cir. 2019).

extortion under the Hobbs Act, 18 U.S.C. § 1951, based on Sterling Bay's alleged "wrongful threat," *id.* §1951(b), of a "hot cargo agreement"[3] in violation of § 8(e) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq. See id.* § 158(e). Goddess also pleads conspiracy to engage in racketeering activity under § 1962(d).

Sterling Bay moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Def. Sterling Bay Cos.' Mot. Dismiss, ECF No. 23; Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 24. In the alternative, Sterling Bay ask the Court to refer the case to the NLRB under the primary jurisdiction doctrine. See Def. Sterling Bay Co.'s Mot. Primary Jurisdictional Referral NLRB, ECF No. 25; Mem. Supp. Mot. Primary Jurisdictional Referral NLRB, ECF No. 26. Because Sterling Bay raises primary jurisdiction as both a ground for dismissal and an alternative basis for NLRB referral, the Court addresses both motions here.

## II.   Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard "is not akin to a probability requirement, but it asks for more than a sheer possibility

---

[3]      A hot cargo agreement is an agreement by a business not to deal with nonunionized labor. *See Bldg. and Const. Trades Council of Metro. Dist. v. Assoc. Builders and Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 223 (1993).

4

that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

When considering a motion to dismiss, courts accept "all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Iqbal*, 556 U.S. at 678.

### III.   <u>Analysis</u>

RICO provides a civil cause of action for plaintiffs damaged by long-term criminal schemes, including organized crime. *See* 18 U.S.C. § 1964(c). To state a RICO claim, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 336 (7th Cir. 2019). This introduces several terms requiring definition.

A RICO "enterprise" can be either a legal entity (such as a corporation, partnership, or association), or a "group of individuals associated in fact." 18 U.S.C. § 1961(4); *see Boyle v. United States*, 556 U.S. 938, 943–44 (2009).

"Racketeering activity" is any predicate offense listed in 18 U.S.C. § 1961(1), including crimes such as bribery, extortion, fraud, money laundering, or drug trafficking. *Id.*

To plead a "pattern" of racketeering activity, the plaintiff must show "at least two acts of racketeering activity," *id.* § 1961(4), and "a relationship between the predicate acts as well as a threat of continuing activity—a standard known as the 'continuity plus relationship' test." *Menzies*, 943 F.3d at 337 (quoting *DeGuelle v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011)). The pattern of racketeering activity must also "affect interstate or foreign commerce." § 1962(c).

Finally, the plaintiff must prove that the defendant is a RICO "person," meaning an individual or entity "distinct from the RICO enterprise," who is responsible for the challenged conduct (*i.e.*, the racketeering activity). *Sabrina Roppo v. Travelers Com. Ins. Co.*, 869 F.3d 568, 588 (7th Cir. 2017) (quoting *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853 (7th Cir. 2013)).

According to Goddess, Sterling Bay (the RICO "person") colluded with the Unions (together comprising an "associated-in-fact enterprise") to engage in numerous acts of extortion (the "conduct" and "racketeering activity") against Goddess and other Sterling Bay tenants to force them to use only unionized labor for moving and contract work. Goddess brings two counts under this theory: conduct or participation in a RICO enterprise under § 1962(c), and RICO conspiracy under § 1962(d).

## A.    NLRB Primary Jurisdiction

Sterling Bay first argues that Goddess's RICO claims should be dismissed because they are "inextricably tied to labor issues" governed by the NLRA.[4] Def.'s Mem. at 1. Sterling Bay points out that Goddess's extortion claim (the "racketeering activity") is based on an underlying allegation of a "hot cargo agreement" in violation of § 8(e) of the NLRA. Thus, in Sterling Bay's view, Goddess's RICO claim falls within the primary jurisdiction doctrine, because the alleged extortion on which it is predicated is "wrongful only by virtue of the labor laws." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 662 (7th Cir. 1992).

As an initial matter, it bears mentioning that "[f]ederal statutes do not *preempt* other federal statutes." *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004) (emphasis added). Goddess's RICO claim—unlike a state law claim that irreconcilably conflicts with federal law—is not dead on arrival simply because it covers the same ground as the NLRA. The question is not whether the NLRA preempts Goddess's RICO claim, necessitating its dismissal. Instead, the question is whether the NLRB has "primary jurisdiction" over the labor law issues in the dispute such that the Court should stay the case in order for the agency to resolve the issues "within [its] special competence." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956); *see Reiter v. Cooper*, 507 U.S. 258, 268 (1993) ("[P]rimary jurisdiction . . . requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling.").

---

[4] Sterling Bay makes a primary jurisdiction argument in both its motion to dismiss and its motion for primary jurisdiction referral. For efficiency's sake, the arguments are addressed together.

7

An NLRB primary jurisdiction analysis proceeds in two stages. First, the Court must determine whether primary jurisdiction applies; *i.e.*, whether the plaintiff's claims involve labor law issues "within the exclusive original jurisdiction of the agency to resolve." *Arsberry v. Illinois*, 244 F.3d 558, 563 (7th Cir. 2001). Second, it must determine whether to stay the litigation pending the NLRB's determination of the labor law issues, or dismiss the case without prejudice. *See Reiter*, 507 U.S. at 268–69 (noting that, when a court finds that the NLRB has primary jurisdiction, "it has discretion either to retain jurisdiction [i.e., enter a stay] or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice").

### 1. Whether Primary Jurisdiction Applies

Typically, "[n]o fixed formula exists for applying the doctrine of primary jurisdiction." *Western Pacific*, 352 U.S. at 64. But Seventh Circuit precedent cabins the inquiry here. In *Talbot*, the Seventh Circuit held that the NLRB has primary jurisdiction over a RICO claim when "the underlying conduct of plaintiffs' RICO claim is wrongful only by virtue of the labor laws." 961 F.2d at 662. Sterling Bay argues that *Talbot* requires the Court to find primary jurisdiction here because proof that Sterling Bay violated the NLRA (specifically, engaged in a hot cargo agreement in violation of § 8(e)) is necessary for Goddess to prove the "wrongfulness" element of its § 1961(1) predicate extortion claim. *See* 18 U.S.C. § 1951(b)(2) (extortion requires "wrongful use of actual or threatened force, violence, or fear"). Goddess naturally favors a narrower interpretation, asserting that conduct is "wrongful only by virtue

8

of" labor law only when the actual predicate offense arises under labor law. Because Goddess alleges Hobbs Act violations, not labor law violations, as predicates for its RICO claim, Goddess argues that this case does not implicate *Talbot*'s rule.

Sterling Bay has the better argument here. First, the predicate offense in *Talbot* was mail fraud, which, like the purported Hobbs Act violation here, is not a labor law violation in itself. 961 F.2d at 662. Yet, because the finding of mail fraud depended on a finding that the defendants violated their duties to bargain fairly under the NLRA, the *Talbot* court found referral appropriate. *See id.* Second, *Talbot*'s language supports the broader interpretation. *Talbot* held that the inquiry centers on the "underlying *conduct*" of the RICO claim. *Id.* (emphasis added). In the RICO context, "conduct" describes what the defendant actually did to further the criminal enterprise, not what predicate offense the plaintiff pleads. *See Goren v. New Vision Int'l., Inc.*, 156 F.3d 721, 727 (7th Cir. 1998) ("conduct" means "participat[ion] in the operation or management of the enterprise" (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). Finally, the cases *Talbot* cites support the position that primary jurisdiction is appropriate if resolution of labor law issues is necessary to the resolution of the plaintiff's claim (a "but-for" test). *See Brown v. Keystone Consol. Indus., Inc.*, 680 F. Supp. 1212, 1225 (N.D. Ill. 1988) ("[B]ut for the proscriptions of the labor law, defendants' conduct simply would not be either mail or wire fraud." (emphasis omitted) (quoting *Butchers' Union Loc. No. 498 v. SDC Inv., Inc.*, 631 F. Supp. 1001, 1011 (E.D. Cal. 1986)); *Butchers' Union*, 631 F. Supp. at 1011 (holding that NLRA "preempted" RICO claim because labor law determined "[w]hether the

conduct constitute[d] a fraud"); *see also DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 516 (E.D.N.Y. 2011) (RICO claim precluded where it was "based on the same facts that would allow recovery under" the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*).

There is no reason to treat the alleged extortion in this case differently than the mail and wire frauds at issue in *Talbot*, *Brown*, and *Butchers' Union*. Goddess does not allege any legal obligation or set of facts separate from the NLRA (or the conduct that it proscribes) that would make Sterling Bay and the Unions' alleged extortion "wrongful." Indeed, the gravamen of Goddess's complaint is that it was forced to use union labor against its will. That claim could just as easily have been brought under § 8(e)'s prohibition on hot cargo agreements. And "[w]hen a plaintiff challenges an action that is 'arguably subject to § 7 or § 8 of the [NLRA],' this challenge is within the primary jurisdiction of the NLRB." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 49 (1998) (second alteration in original) (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245 (1959)).

Goddess points to two recent cases within this district that reached the opposite conclusion, retaining primary jurisdiction over RICO claims based on Hobbs Act violations despite their entanglement with the NLRA's prohibition of unfair labor practices. *See CivCon Servs., Inc. v. Accesso Servs., LLC*, No. 20 C 1821, 2020 WL 6075869 (N.D. Ill. Oct. 15, 2020); *Wacker Dr. Exec. Suites, LLC v. Jones Lang LaSalle Ams. (Ill.), LP*, No. 18-CV-5492, 2019 WL 2270000 (N.D. Ill. May 28, 2019). The Court respectfully declines to follow either case. In *CivCon*, which also involved alleged

10

extortionary enforcement of hot cargo agreements between a property manager and various unions, the court retained primary jurisdiction (in dicta, by the way) because "the Court here is not being asked to resolve whether the alleged hot cargo agreement violates the NLRA. The predicate claim under RICO here is the Hobbs Act, not the NLRA." 2020 WL 6075869, at *5. But as explained above, *Talbot* focuses the inquiry on whether the defendant's conduct violated the NLRA, not whether the plaintiff pleaded a predicate offense that is itself a violation of the NLRA. *See* 961 F.2d at 662 (NLRB had primary jurisdiction over mail fraud claim because the challenged conduct was only fraudulent because it violated the NLRA); *see also DeSilva*, 770 F. Supp. 2d at 516 (explaining that "civil RICO claims [are] precluded where . . . the RICO claims are based on the same facts that would allow recovery under [an] alternative scheme" such as the NLRA). And in *Wacker*, the court had no occasion to consider the applicability of the primary jurisdiction doctrine. *See generally* 2019 WL 2270000.

Goddess next contends that referral to the NLRB on the basis of primary jurisdiction is improper because "any complaint to the NLRB must be filed within six months of the violation," and the NLRB therefore does not have jurisdiction. Pl. Goddess Baker Wacker L.L.C.'s Resp. Sterling Bay's Mot. Primary Jurisdictional Referral NLRB ("Pl.'s Resp. Mot. NLRB Referral") at 3, ECF No. 32 (citing 29 U.S.C. § 160(b)). Goddess argues that referral to the NLRB is time-barred because Goddess alleges in its reply brief that Sterling Bay began forcing it to use unionized labor in 2016 and ended that practice in 2019. But this argument is inconsistent with its own

complaint, which states that "Sterling Bay's implementation and enforcement of its mandatory union-only rule is still in existence." Compl. ¶ 43, *see also, e.g., id.* ¶¶ 44–45. Taking this to be true, the statute of limitations likely would not run until the last act constituting a violation of the statute. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010); *see Drake v. Richerson*, 948 F. Supp. 2d 817, 824 (N.D. Ohio 2013) ("continuing violation" doctrine may apply to NLRB statute of limitations). Goddess's limitations objection does not help it here.

Goddess also argues that the issue Sterling Bay proposes for referral is an "abstract policy question" rather than a "real dispute." Pl.'s Resp. Mot. NLRB Referral at 4. But Sterling Bay's framing of the question does not mean there is no legitimate dispute for the NLRB to decide. The NLRB would be tasked with determining whether Sterling Bay violated the NLRA by participating in a hot cargo agreement under § 8(e). That dispute is well within the NLRB's authority to hear.

Finally, Goddess claims that a referral to the NLRB would leave it without a remedy because the NLRB cannot award money damages (with the exception of backpay to employees). This is an overstatement. Once the NLRB issues its decision, Goddess will be able to resume this action (if the Court retains jurisdiction) or refile its complaint (if the Court dismisses the case without prejudice) and pursue money damages just as it is doing now. *See Baker*, 357 F.3d at 688 ("Once the [NLRB] has completed its work, the parties return to court for the resolution of any remaining issues. Here, for example, if the dispute were referred to the NLRB, and the Board

12

determined that labor law neither protected nor prohibited IBP's conduct, the litigation could resume.").

For all of the above reasons, the Court concludes that the NLRB has primary jurisdiction as to the conduct alleged in this case.

## 2. Whether to Stay or Dismiss Without Prejudice

The only remaining issue is whether to stay this case pending the NLRB's review or dismiss the complaint without prejudice. The Supreme Court instructs that dismissal without prejudice is appropriate in cases such as this "if the parties would not be unfairly disadvantaged." *Reiter*, 507 U.S. at 268. In this context, a party may be unfairly disadvantaged if the case involves a "damage[s] action for past conduct [that] cannot be easily reinstituted at a later time" because it is "likely to be [time-]barred by the time the [agency] acts." *Carnation Co. v. Pac. Westbound Conf.*, 383 U.S. 213, 223 (1966); *see Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 75 (E.D.N.Y. 2015) (noting that when deciding whether to stay or dismiss, "the paramount concern is that the deferral not work as a time-bar" (quoting *Johnson v. Nyack Hosp.*, 86 F.3d 8, 11 (2d Cir. 1996))). The statute of limitations for a RICO claim is four years after the plaintiff discovers, or should have discovered, the injury. *Rotella v. Wood*, 528 U.S. 549, 552 (2000). Precisely when Goddess discovered or should have discovered that it was being forced to use union labor for its improvements is a factual question that cannot be resolved on the current record. *See Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012) (when a statute of limitations begins to run is usually inappropriate to resolve at the 12(b)(6) stage because the question

"typically turn[s] on facts not before the court at that stage in the proceedings"); *see also Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 927–28 (7th Cir. 2015) (district court abused its discretion by dismissing RICO claim based on statute of limitations before discovery). Because it is unclear when the statute of limitations will expire, the Court finds that dismissing the complaint without prejudice risks unfairly prejudicing Goddess and, therefore, will stay the case pending the NLRB's review.

## B.   Sterling Bay's Remaining Rule 12(b)(6) Arguments

### 1. Relationship to Interstate Commerce

Sterling Bay raises a number of other arguments to dismiss the claims. First, it contends that Goddess inadequately pleads a relationship between the alleged enterprise's activities and interstate commerce. Sterling Bay points out that the enterprise's alleged activities occur only in downtown Chicago. But even if the enterprise's activities only occur within one state, the interstate commerce element can be met by a showing that the enterprise's activities "affect" interstate commerce. § 1962(c). This bar is quite low. *See United States v. Muskovsky*, 863 F.2d 1319, 1325 (7th Cir. 1988), *cert. denied,* 489 U.S. 1067 (1989); *CivCon*, 2020 WL 6075869, at *4 (interstate commerce element of RICO claim requires "*de minimis* effects"). Goddess alleges that some Sterling Bay tenants injured by the enterprise's purported extortion are headquartered in other states. This suffices to show that the enterprise "affects" interstate commerce for present purposes.

### 2.  Extortion

Next, Sterling Bay argues that Goddess's allegations of "wrongful threats" fail to state a claim under the Hobbs Act. In support, Sterling Bay notes that the complaint does not identify any threats Sterling Bay made to Goddess or any other tenants. This argument likewise is unpersuasive. To state a claim for extortion under the Hobbs Act, the plaintiff must show that the defendant obtained property[5] from the plaintiff with consent induced by "wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b). Exploiting a plaintiff's fear of economic loss is a basis for liability under § 1951(b). *See United States v. Sturman*, 49 F.3d 1275, 1281 (7th Cir. 1995); *see also United States v. Koziol*, 993 F.3d 1160, 1182 (9th Cir. 2021). And when the alleged extortion preys upon an existing fear (such as fear of business failure), "a defendant can be liable under the Hobbs Act for the wrongful exploitation of [that] fear . . . even if there is no explicit threat." *United States v. Orlando*, 819 F.3d 1016, 1024 (7th Cir. 2016).

Here, Goddess alleges that Sterling Bay agrees with the Unions to prevent any of its tenants from using nonunion labor by, *inter alia*, announcing that policy in its tenant handbook and preventing the tenants from starting work unless they use union contractors. Sterling Bay's tenants pay these higher labor costs because they fear economic loss from being unable to make improvements to their businesses.

---

[5] The parties do not discuss the "obtain property" element in their pleadings, but the Court notes that the "obtain property" element is satisfied when the defendant deprives the plaintiff of property and "direct[s] its transfer to another of his choosing, irrespective of whether he receives a personal benefit as a result." *United States v. Brissette*, 919 F.3d 670, 679 (1st Cir. 2019) (collecting cases). Thus, even though Goddess has not asserted that Sterling Bay itself acquired the extorted property (the increased labor costs), its allegations that Sterling Bay's coercion increased business for Union members establish this element.

Taken as true, these factual allegations "allow[] the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Sterling Bay extorted Goddess, preying on its existing fear of losing business by not being able to complete renovations, even though Goddess has not alleged that Sterling Bay explicitly threatened it. *See Orlando*, 819 F.3d at 1024; *Wacker*, 2019 WL 2270000, at *12 (holding that allegations that defendant imposed a union-only rule on tenants using fear of economic harm sufficed to state a claim for Hobbs Act extortion).

### 3. Existence of an "Enterprise"

Next, Sterling Bay argues that Goddess has not alleged that Sterling Bay and the Unions constitute an associated-in-fact enterprise. An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 944 (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)). To be an associated-in-fact enterprise, a group must have "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.*

Sterling Bay contends that Goddess has not pleaded the existence of an enterprise because it has not alleged that Sterling Bay and the Unions acted together to pursue a joint purpose. Sterling Bay leans on the Seventh Circuit's distinction between commercial enterprises, "where each entity acts in its individual capacity to pursue its individual self-interest," and joint enterprises, "where each individual entity acts in concert with the others to pursue a common interest." *Bible v. United Student Aid Funds, Inc.*, 799 U.S. 633, 656 (7th Cir. 2015). In Sterling Bay's view,

16

the complaint pleads only that Sterling Bay, the Unions, and their agents acted pursuant to their individual self-interests. For example, Sterling Bay claims that Sterling Bay removes the nonunion contractors "to avoid pressure" from Local 399, not to benefit the Unions, and that Local 1 and Local 705 join the threatened picketing "to support Local 399 and other unions generally." Def.'s Mem. at 15. Sterling Bay's construction is overly narrow. Even though the individual actors may have their own underlying motivations for participating in the alleged scheme, Goddess alleges that they all work towards a common goal—keeping Sterling Bay's buildings union-only. Indeed, in *Wacker*, the court found a common interest sufficient to establish an associated in fact enterprise on very similar facts. *Compare, e.g.*, 2019 WL 2270000, at 14 ("WDES claims that JLL zealously enforces the union-only policy by directing its building managers to keep non-union contractors out of the buildings it manages . . . Building managers require proof of union membership before permitting a contractor into the building and deny building access to non-union contractors."), *with, e.g.*, Compl. at ¶ 15 ("Before Sterling Bay permits a tenant to use a contractor in its office space, it requires proof of the contractor's union membership"); *id.* ¶ 41 ("Sterling Bay maintains a strict policy and practice to not allow any contractor to access the building without its approval. It will not approve any non-union firm.").

Here, Goddess has alleged facts showing that Sterling Bay and the Unions acted cooperatively for the "purpose" of preventing Sterling Bay tenants from using nonunion contractors. While discovery may reveal otherwise, Goddess's allegations

"allow the court to draw the reasonable inference" that Sterling Bay and the Unions formed an enterprise—which is enough for their claim to survive at the pleading stage. *Iqbal*, 556 U.S. at 678.

### 4. Conspiracy

Finally, Sterling Bay argues that Goddess's § 1962(d) conspiracy claim fails because Goddess has failed to state a claim for a § 1962(c) violation. But this is a derivative argument, and because the viability of the § 1962(c) claim will depend largely upon the determination by the NLRB, Sterling Bay's request to dismiss the conspiracy claim also is denied.

## IV. Conclusion

For the foregoing reasons, Sterling Bay's motion to dismiss for failure to state a claim is denied. Sterling Bay's motion for primary jurisdictional referral to the NLRB is granted. The parties are directed to request from the NLRB a ruling on whether Sterling Bay and the Unions engaged in a hot cargo agreement in violation of § 8(e) of the NLRA as alleged in the complaint. The Court enters a stay of proceedings in this case pending the NLRB's decision. The parties are ordered to file a status report within five days of the NLRB's determination.

IT IS SO ORDERED.                    ENTERED: 3/22/22

_____
**John Z. Lee**
**United States District Judge**

18